**The below described is SIGNED.**

**Dated: July 29, 2011**

_____
**R. KIMBALL MOSIER
U.S. Bankruptcy Judge**



---

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Wardley Corporation,<br><br>Debtor. | Bankruptcy Number: 09-29171<br><br>Involuntary Chapter 7<br><br>Judge R. Kimball Mosier |

## MEMORANDUM DECISION

The matter before the Court is an Amended Motion to Vacate Dismissal filed by Ms. Cindy Thompson, a creditor of the putative debtor, which the Court has treated as a motion seeking reconsideration of its involuntary petition[1] (Motion). The Court previously dismissed the involuntary petition, filed by Ms. Thompson and others, on August 18, 2010. At the hearing on the Motion on July 7, 2011, Wardley Corp. (Debtor) was represented by John T. Anderson of Anderson & Karrenberg and Ms. Thompson represented herself. The Court granted the Motion during the hearing and made findings of fact and conclusions of law on the record. This Memorandum Decision is entered to supplement those findings and conclusions.

---

[1] *Pro se* pleadings are held to less stringent standards and should be reviewed liberally. *See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

## JURISDICTION

The Motion is seeking the Court's review of its dismissal of an involuntary bankruptcy petition filed against the Debtor. The Court has original jurisdiction over this matter under 28 U.S.C. §§ 157(b)(1) and 1334 as it is a case arising under title 11.

## FACTS

1. In July of 2001, the Debtor sold its assets to NRT, Inc. (NRT).

2. Under the terms of the NRT asset sale, the Debtor remained responsible for resolving any lawsuits that were then pending or subsequently filed against the Debtor.

3. A lawsuit commenced by Ms. Thompson against the Debtor was pending in the Third District Court, Salt Lake County, Utah at the time of the NRT asset sale (Thompson Lawsuit).

4. In April of 2003, Gilbert Development Corporation (GDC) brought a lawsuit against the Debtor in the Fifth District Court, Washington County, Utah (GDC Lawsuit).

5. The Debtor has produced an unconditional assignment dated August 12, 2005, (Assignment) which purports to assign all of the Debtor's right, title, and interest in the proceeds of any recovery obtained in connection with the GDC Lawsuit and or the Thompson Lawsuit to Lynn Wardley, an individual who has or had an interest in the Debtor.[2]

---

[2] Opp'n to Am. Mot. Vacate Dismissal 52, ECF No. 127.

6. According to the recitals to the Assignment, Mr. Wardley advanced approximately $60,000 to the Debtor in defense of the GDC Lawsuit and the Thompson Lawsuit.[3]

7. According to the Affidavit of Allen Bloomgren, CPA, by August 12, 2005, Mr. Wardley had only advanced $55,051 to fund the defense of the two lawsuits.[4]

8. In both lawsuits, the Debtor is the named defendant and not the plaintiff.

9. In January of 2007, a directed verdict in favor of the Debtor on its fraud claim was entered in the GDC Lawsuit. The jury returned a special verdict for the Debtor, and the court subsequently entered an award of attorney fees and costs in favor of the Debtor.

10. On August 28, 2009, Ms. Thompson, as petitioning creditor, commenced this involuntary bankruptcy proceeding.

11. Throughout the involuntary bankruptcy proceeding, the Debtor has asserted that it has no assets.[5]

12. The Court has always been puzzled by the question of why the Debtor, if it had no assets, would expend significant attorney fees to oppose an involuntary bankruptcy petition.

13. On July 26, 2010, the Debtor filed a motion to dismiss this involuntary proceeding.[6]

---

[3] *Id.* ¶ D.

[4] ¶ 6, ECF No. 129.

[5] In three separate hearings, the Debtor has represented to this Court that it had no assets. February 22, 2011, Oral Argument at 2:13:21 pm; May 20, 2010, Oral Argument at 10:12:58 am; April 29, 2010, Oral Argument at 1:36:12 pm.

[6] ECF No. 94.

14. On July 29, 2010, Ms. Thompson also filed a motion to dismiss this involuntary proceeding.[7]

15. On August 18, 2010, the Court entered an order dismissing this involuntary proceeding.[8] In doing so, the Court granted the Debtor's motion to dismiss and denied Thompson's motion to dismiss.

16. On December 29, 2010, GDC and the Debtor entered into a settlement agreement ("Settlement Agreement") wherein GDC agreed to pay to the Debtor the sum of $350,000 no later than December 31, 2010.

17. Paragraph 10 of the Settlement Agreement states as follows:

> Authority. Each party represents and warrants that the individual signing this Agreement on behalf of the party is authorized to do so and binds the party on whose behalf he or she is signing. The Parties further represent and warrant that each is the sole holder of the claims being released in this Agreement, that the party has not assigned those claims to any other person or entity, and that no one else has any claim, title or interest in or to the claims being released herein.[9]

## DISCUSSION

The Debtor opposes this Motion arguing, in substance that (1) Ms. Thompson commenced the involuntary proceeding in bad faith in an effort to collect a debt owed to her; and (2) that the GDC receivable is and was not property of the Debtor by virtue of the Assignment. The Court will address the bad faith argument first. The case law addressing the question of bad faith with respect

---

[7] ECF No. 98.

[8] ECF No. 105.

[9] Am. Mot. Vacate Dismissal, Ex. F, ¶ 10, ECF No. 125.

to commencing an involuntary bankruptcy proceeding frequently involves involuntary debtors that are either going concerns or engaged in business activities.[10] The threat of an involuntary bankruptcy and the stigma of bankruptcy is substantial in those situations wherein the potential involuntary debtor is a going concern. Those same arguments diminish considerably when the debtor is not a going concern. Although the Debtor alleges bad faith, it has made no showing of bad faith to support its allegations other than to allege that Ms. Thompson acted in bad faith because she commenced the involuntary proceeding as a means to collect a debt owed to her by the Debtor.[11] The desire of a creditor to be paid is not, in and of itself, evidence of bad faith. All creditors would like to be paid. Congress provided under § 303(b)(2) of the Code[12] that a single creditor may initiate an involuntary proceeding. For a single creditor to pursue rights established by Congress is not *per se* bad faith, and is not, by itself, grounds for dismissal.[13]

The Debtor's second argument is that the GDC receivable is not property of the estate. Ms. Thompson bases this Motion upon the argument that the GDC receivable is property of the estate.

---

[10] *See, e.g.*, *R. Eric Peterson Constr. Co., Inc. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co., Inc.)*, 951 F.2d 1175 (10th Cir. 1991); *In re Diloreto*, 388 B.R. 637 (Bankr. E.D. Pa., 2008); *In re Key Auto Liquidation Ctr., Inc.*, 372 B.R. 74 (Bankr. N.D. Fla., 2007).

[11] The Court notes that one of the reasons the Court denied the Debtor's request for fees under § 303(i) was because of the questionable damages to the Debtor as a result of the involuntary petition and the reasonableness of expending fees and costs to contest an involuntary petition of a corporation that is essentially nothing more than an empty shell.

[12] All chapter and section references are contained in Title 11 of the United States Code (2006) unless otherwise specified herein.

[13] *See Bock Transp., Inc. v. Paul (In re Bock Transp., Inc.)*, 327 B.R. 378, 381 (8th Cir. B.A.P. 2005) (discussing that the question of bad faith would depend on whether the single petitioning creditor knew the putative debtor had twelve or more creditors).

Her Motion sounds under Federal Rule of Civil Procedure 60(b)(2)[14], arguing that discovery of the GDC receivable is newly discovered evidence. The Debtor responds to the motion arguing that the GDC receivable was not property of the estate because of the Assignment.

Ms. Thompson's subpoena served on the Debtor on December 29, 2009, included a request for copies of any and all business agreements and contracts of any kind entered into by and between the Debtor and its officers, Mr. Wardley and Kenneth U. Tramp, and its subsidiaries and NRT and its officers and subsidiaries.[15] It also included a request for copies of documents pertaining to any and all debts owed by the Debtor to Mr. Wardley.[16] Had the assignment dated August 12, 2005, been turned over to Ms. Thompson in response to the subpoena served on the Debtor on December 29, 2009, then Ms. Thompson would lack grounds to bring her Rule 60(b) motion based upon newly discovered evidence.

The terms of the Assignment appear to be in direct conflict with paragraph 10 of the Settlement Agreement with GDC. The Assignment is a self-serving document signed by Mr. Wardley for the Debtor as assignor and by Mr. Wardley as assignee. The Settlement Agreement appears to be a document negotiated at arms length and signed by parties with adverse interests to one another. In addition to paragraph 10, the Settlement Agreement includes paragraph 6 which states that the agreement constitutes the entire agreement and the agreement may not be altered, amended, modidied or changed except in a writing executed by all of the parties.

---

[14] As incorporated under Federal Rule of Bankruptcy Procedure 9024 to this proceeding.

[15] Subpoena Duces Tecum 3, ¶ c, ECF No. 16.

[16] *Id.* ¶ h.

At a minimum, the conflict between the Settlement Agreement and the Assignment warrants further investigation to determine whether the GDC receivable is or was property of the estate.[17] The GDC receivable is one potential explaination of why the Debtor went to great lengths and expended significant amounts of money to oppose the involuntary petition.

Had the Court been aware of the existence of the GDC receivable in August of 2010, the Court likely would have denied both motions to dismiss.

The Court finds the existence of the GDC receivable to be newly discovered evidence that was discovered after entry of the Court's dismissal order, that Ms. Thompson was diligent in her efforts to discover this evidence prior to the dismissal hearing, that the newly discovered evidence is material, and that had the Court been aware of the newly discovered evidence at the dismissal hearing, the Court would have ruled differently. Based on the findings above, the criteria announced in *Graham v. Wyeth Laboratories*[18] for granting relief under Rule 60(b)(2) are satisfied. Rule 60(b) "gives the court a grand reservoir of equitable power to do justice in a particular case."[19] Because of the need to resolve the conflict between the terms of the Settlement Agreement and the Assignment and because of the potential impact that resolution of the question may have on the

---

[17] The scope of § 541(a)(1) is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983).

[18] 906 F.2d 1399, 1416 (10th Cir. 1990) ("For newly discovered evidence to provide a basis for a new trial under Fed.R.Civ.Pro. 60(b)(2), [a movant must] satisfy five conditions: . . . (1) the evidence was newly discovered since the trial; (2) [the movant] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence had to be material; and (5) that a new trial, with the newly discovered evidence would probably produce a different result.")

[19] *State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1080 (10th Cir. 1996) (citation omitted).

involuntary proceeding, the Court exercises its equitable power[20] and will vacate dismissal of this case.

---------------------------------------End of Document ---------------------------------------

ORDER SIGNED

---

[20] The court has the equitable power to modify an order in the face of changed circumstances.  *See David C. v. Leavitt*, 242 F.3d 1206, 1210 (10th Cir. 2001), *cert. denied*, 534 U.S. 822 (2001).

_____ooo0ooo_____

## SERVICE LIST

      Service of the foregoing **Memorandum Decision** will be effected through the Bankruptcy Noticing Center to the following parties.

Wardley Corporation
5296 South Commerce Drive, Suite 300-303
Murray, UT 84107

John T. Anderson
Anderson & Karrenberg
50 West Broadway
Suite 700
Salt Lake City, UT 84101-2006

Cindy L. Thompson
2419 North 2550 East
Layton, UT 84040

Cindy L. Thompson
1718 W. Joust Court
Salt Lake City, UT 84116

Delano S. Findlay
684 East Vine St. #3B
Murray, UT 84107

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111