**The below described is SIGNED.**

Dated: November 09, 2012

*R. Kimball Mosier* (signature)

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re: Wardley Corporation, Debtor. | Bankruptcy Number 09-29171<br>Chapter 7<br>Judge R. Kimball Mosier |
|---|---|

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF ORDER ALLOWING CINDY L. THOMPSON'S CLAIM**

The proof of claim filed by Cindy L. Thompson in this bankruptcy case has drawn two objections. The first objection to Thompson's claim was filed by George B. Hofmann, the chapter 7 trustee. The second objection to Thompson's claim was filed by Lynn B. Wardley (Wardley). The Trustee's objection was heard by the Court on August 7, 2012, and Wardley's objection was heard on September 12, 2012. At the hearings, Thompson appeared, *pro se*, Melyssa D. Davidson of Parsons Kinghorn Harris appeared on behalf of the Trustee, and John T. Anderson of Anderson & Karrenberg, PC, appeared on behalf of Wardley. The Court has elected to issue findings of fact and conclusions of law addressing the two objections to Thompson's claim.

## JURISDICTION

The matter before the Court is Cindy L. Thompson's proof of claim filed in this bankruptcy case and the objections to Thompson's proof of claim filed by the Trustee and Lynn B. Wardley. The Court has original jurisdiction over this matter under 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and the Court may enter a final order.

## FINDINGS OF FACT

This bankruptcy case began on August 28, 2009, when Thompson filed an involuntary bankruptcy petition against the Debtor, Wardley Corporation, but the story began more than a decade before. This bankruptcy case is essentially a continuation of litigation between Thompson and Wardley.

**The Prepetition History.**

Thompson was formerly employed by the Debtor as a real estate agent. A dispute arose between Thompson and the Debtor regarding a real estate commission earned by Thompson for a closing which occurred on June 28, 1996. As a result of the dispute, in 1999 Thompson commenced a lawsuit against the Debtor in the Third District Court, State of Utah.

In July 2001, the Debtor sold its assets to NRT, Inc., but any lawsuits involving the Debtor that were pending or subsequently filed were excluded from the sale. In April 2003, Gilbert Development Corporation brought a lawsuit against the Debtor and others in the Fifth District Court, State of Utah.

Meanwhile, Thompson's litigation against the Debtor in the Third District Court dragged on. Finally, a jury's Special Verdict was entered on November 18, 2005. The Special Verdict made two findings: (1) The Debtor breached its agreement with Thompson, and (2) The amount of damages (which pursuant to jury instructions were limited to commissions) totaled $46,000. Interest was not included in the jury's calculation of damages. On December 13, 2005, the Third District State Court awarded Thompson a judgment (2005 Judgment) against the Debtor in the amount of $46,000 together with interest at 10% per annum as provided by law. On August 3, 2006, Thompson was also awarded a judgment (2006 Judgment) against the Debtor in the amount of $33,008.85 for her attorneys' fees and costs. Thompson received a $5,000 payment in November 2006, but all of Thompson's other efforts to collect on her judgments were unsuccessful.

The Gilbert Development litigation also dragged on. In April 2009, the Fifth District State Court entered final judgment on the merits of that case in favor of the defendants. On March 13, 2009, the Fifth District State Court entered a Judgment in Favor of Defendants (Gilbert Development Judgment) on Attorneys' Fees and Costs awarding the defendants $410,823.89.

Other litigation between Thompson, the Debtor and Wardley ensued. Thompson commenced an action against the Debtor and Wardley in the Third District State Court. The details of that litigation are not important to the issues before this Court, other than the fact that on April 13, 2009, as a Rule 11 Sanction, Wardley was awarded judgment against Thompson in the amount of $6,667 and against her attorney, Delano S. Findlay, in the amount of $13,333.

To collect on his judgment against Findlay, Wardley obtain a writ of execution, and on July 22, 2009, the Salt Lake County Constable levied upon and sold to Wardley, for a $500 bid, several of Findlay's assets. The property described in the constable's certificate of sale are:

All accounts receivable of Delano S. Findlay,

All of Delano S. Findlay's right, title and interest in and to his contingent and/or other fee interest in monies paid for or on account of (a) that certain Judgment dated December 13, 2005, and (b) that certain Order Awarding Attorney Fee[s] and Costs, dated August 2, 2006 under which Cindy L. Thompson is the plaintiff/judgment creditor, and Wardley Corporation is the defendant/judgment debtor, entered in proceedings entitled *Cindy L. Thompson v. Wardley Corporation dba Wardley Better Homes & Gardens Real Estate*, Third Judicial District Court of Salt Lake County, State of Utah, Case No. 990912516.

No documentation regarding Findlay's "right, title and interest in and to his contingent and/or other fee interest in monies paid for or on account of" the judgments was introduced into evidence. Findlay did acknowledge that he was not paid for all of the services he rendered for Thompson but disavowed any ownership interest in the judgments. Findlay did not even assert that he was entitled to an attorney's lien.[1]

On July 14, 2009, Thompson obtained a writ of execution, to which the Debtor objected. On August 18, 2009, the Third District State Court heard the Debtor's objection to the writ of execution and sustained in part and overruled in part the Debtor's objection. The Third District State Court order directed Thompson to prepare and provide to Debtor's counsel a written inventory of all items of personal property that she proposed to levy upon and sell under the writ of execution and allowed the Debtor five business days to file any objection to the inventory. No

---

[1] The Court takes judicial notice that Utah law does provide for an attorney's lien. Utah Code Ann. § 38-2-7. Despite this statutory provision Findlay does not assert an attorney's lien, and Wardley failed to introduce any evidence that Findlay was entitled to, or held an attorney's lien.

written inventory in compliance with the Third District State Court's order was prepared prior to Thompson initiating this bankruptcy case.

**The Postpetition Gap Period.**

Thompson filed the involuntary petition against the Debtor on August 28, 2009. In its answer to the petition the Debtor acknowledged that it was unable to pay Thompson's judgment but contested the petition on the grounds that it was filed in bad faith. Throughout the involuntary bankruptcy proceeding, the Debtor asserted that it has no assets.[2] The involuntary proceedings dragged on. During this time, the Debtor sought relief from the automatic stay to return to the Third District State Court to clarify that court's prior ruling that certain bank accounts were not the Debtor's accounts. Thompson opposed the motion for relief arguing that she should not be stayed in the State Court proceedings if the Debtor was not stayed. After hearing argument, on May 14, 2010, this Court entered its order terminating the automatic stay with respect to the Third District State Court litigation. The order provided "to the extent there exists an automatic stay against further prosecution of the State Court Case, the stay shall be, and hereby is, terminated."

On July 26, 2010, the Debtor filed a motion to dismiss the involuntary proceeding. On July 29, 2010, Ms. Thompson also filed a motion to dismiss the involuntary proceeding. The Court entered its order dismissing this case on August 18, 2010. In doing so, the Court granted the Debtor's motion to dismiss and denied Thompson's motion to dismiss.

---

[2] In three separate hearings, the Debtor has represented to this Court that it had no assets. February 22, 2011, Oral Argument at 2:13:21 pm; May 20, 2010, Oral Argument at 10:12:58 am; April 29, 2010, Oral Argument at 1:36:12 pm.

Around October 16, 2010, Thompson prepared and served on Debtor's counsel an amended inventory of personal property to be levied upon pursuant to the Third District State Court's order of August 2009.

On December 29, 2010, Gilbert Development and the Debtor entered into a settlement agreement to resolve the Gilbert Development Judgment. Gilbert Development agreed to pay to the Debtor the sum of $350,000 no later than December 31, 2010.

Paragraph 10 of the Settlement Agreement states as follows:

> <u>Authority</u>. Each party represents and warrants that the individual signing this Agreement on behalf of the party is authorized to do so and binds the party on whose behalf he or she is signing. The Parties further represent and warrant that each is the sole holder of the claims being released in this Agreement, that the party has not assigned those claims to any other person or entity, and that no one else has any claim, title or interest in or to the claims being released herein.

On December 30, 2010, Gilbert Development wire transferred $350,000 to Wardley.

Thompson obtained another writ of execution which was served on the Debtor on December 30, 2010. The writ of execution directed seizure and sale of:

> Any and all of Wardley Corporation's right, title and interest in and to that certain Judgment under which Gilbert Development Corporation is the plaintiff/creditor and Wardley Corporation is the defendant/debtor, entered in proceedings entitled *Gilbert Development Corporation v. Wardley Corporation, Don Grymes, Terry LoCiero, Lloyd Melling, Chad Riddle, et.al.*, Fifth Judicial District Court, St. George Department, Case No. 030501128.

On March 31, 2011, Thompson bid $500 of her Judgment at a Constable's Sale of the Debtor's property.

Apparently frustrated in her attempts to collect her on judgments pursuant to state law, Thompson returned to this Court, invoking its jurisdiction. On May 23, 2011, Thompson filed an amended motion to vacate the order dismissing the involuntary petition (Motion to Vacate

Dismissal). Thompson invoked Fed R. Civ. P. 60(b), made applicable by Fed. R. Civ. P. 9024, arguing that the Gilbert Development settlement was part of a fraud upon on this Court. The Court held a hearing on the Motion to Vacate Dismissal on July 7, 2011. At the hearing, the Court had extensive discussions with Thompson about the relief she was requesting and the consequences that may result. Specifically, Thompson was advised by the Court that if the dismissal were vacated, an order for relief entered and a trustee appointed, Thompson's role in this case would be over. Notwithstanding the Court's attempt to apprise Thompson of the consequences, she persisted in her motion. At the hearing on the Motion to Vacate Dismissal, Thompson did not intimate or argue that she owned, or had a secured claim to the funds transferred to Wardley.

In response to the Motion to Vacate Dismissal, the Debtor produced an Unconditional Assignment dated August 12, 2005, which purports to assign all of the Debtor's right, title, and interest in the proceeds of any recovery obtained in connection with the Gilbert Development lawsuit and the Thompson lawsuit to Wardley.

Notwithstanding Thompson's postpetition discovery requests, the Debtor had failed to previously disclose the Assignment. The Assignment was not disclosed to this Court until June 22, 2011 when it was attached to the Debtor's objection to the Motion to Vacate Dismissal. This Court concluded that the Assignment was a self-serving document signed by Mr. Wardley for the Debtor as assignor and by Mr. Wardley as assignee and was evidence that would have been relevant to possible claims against Wardley and to the Debtor's motion to dismiss the involuntary petition.

There is a potential conflict between the Assignment, which purports to transfer all right, title and interest in the Gilbert Development recovery to Wardley, and the settlement agreement

-7-

with Gilbert Development, which was executed by the Debtor and represents that the Debtor is the holder of the claim being released. Because the Assignment had not previously been disclosed, this Court concluded that there may be potential avoidance actions which should be investigated by a trustee. After considering the evidence and arguments at the hearing, this Court determined that the Motion to Vacate Dismissal should be granted under Rule 60(b)(2). On August 1, 2011, the Court entered an order vacating the dismissal and the Debtor thereafter filed a consent to entry of an order for relief.

**After the Order For Relief.**

On September 1, 2011, the order for relief was entered and George B. Hofmann was appointed as the chapter 7 trustee in this case. It appears that the Court's advice and instruction to Thompson at the hearing on her Motion to Vacate Dismissal fell on deaf ears. After the Trustee's appointment, Thompson continued to file numerous pleadings in this case. Her claim which was originally $150,000.00, the amount Thompson claimed on the involuntary petition, ballooned to $596,226.92. She sought to have Wardley included in this bankruptcy as the Debtor's alter ego. Thompson took issue with the Trustee's administration of the case and filed a motion to remove the Trustee. Thompson objected to the Trustee's settlement of the estate's claims against Wardley and objected to Wardley's proof of claim,[3] even though Wardley was waiving his claim as part of the settlement with the Trustee. But Thompson was not alone in this litigious approach. Wardley also filed numerous motions and objections, including an objection to Thompson's proof of claim, and has asserted that he owns a portion of Thompson's claim.

---

[3]Thompson and Wardley are the only creditors who have filed claims in this case.

To resolve the estate's claims against Wardley and liquidate Thompson's and Wardley's claims, the Trustee proposed to settle the estate's claims against Wardley for $190,000 and a waiver of Wardley's claim, and to allow Thompson's claim as an unsecured claim in the amount of $161,260.18, the amount as filed, plus interest. Absent the cost of administration being driven up by useless litigation, the Trustee estimated his settlement with Wardley would generate sufficient funds to pay Thompson's claim in full. The Trustee's proposal was unacceptable to Thompson. Apparently Thompson was not interested in being paid her claim amount but wanted something more.

**Thompson's Proofs of Claim.**

On October 20, 2011, Thompson filed a proof of claim (POC #2-1) in the amount of $580,369.01. The proof of claim asserts that $410,823.89 of the proof of claim is a Gilbert Development account receivable sold to Thompson at a constable's sale of March 31, 2011. Thompson filed her first amended proof of claim (POC #2-2) on December 30, 2011, in the amount of $596,226.92 and continued to allege that $410,823.89 of the proof of claim is a Gilbert Development account receivable sold to Thompson at a constable's sale of March 31, 2011.

On January 24, 2012, the Trustee filed an objection to Thompson's proof of claim arguing that according to his calculations, Thompson was entitled to an unsecured claim in the amount of $161,260.18.

On March 27, 2012, Thompson filed her second amended proof of claim (POC #2-3) in the amount of $596,936.92 and continued to allege that $410,823.89 of the proof of claim is a Gilbert Development account receivable. On May 25, 2012, Thompson filed a notice of secured claim Thompson asserting that her proof of claim was secured by way of a bill of sale acquired

-9-

at a sheriff's sale conducted on March 31, 2011 and that she had acquired the Debtor's right, title and interest in the Gilbert Judgment.

On June 15, 2012, Thompson filed her third amended proof of claim (POC #2-4) alleging that she held a claim in the amount of $161,260.18 secured by personal property valued at not less than $410,823.89.

Wardley objected to Thompson's third amended proof of claim on July 6, 2012. Wardley argues that Thompson should not be allowed pre-judgment interest on the 2005 Judgment, should not be allowed any post-judgment attorney's fees and costs, and that the portion of the 2005 Judgment and 2006 Judgment previously owned by Findlay and acquired by Wardley should be deducted from Thompson's claim.

The Court held a hearing on the Trustee's objection to Thompson's claim on August 7, 2012, and from bench ruled that Thompson's Claim is unsecured and that the claim amount, as stipulated between the Trustee and Thompson, $161,260.18, is reasonable.

The Court did not address Wardley's objection to Thompson's claim at the August 8, 2012 hearing because the objection had not been properly noticed. The Court did address Wardley's objection to Thompson's claim on September 12, 2012 and issued its bench ruling on September 21, 2012, allowing Thompson an unsecured claim in the amount of $132,136.99.

**CONCLUSIONS OF LAW**

The Trustee's and Wardley's claim objections raise three issues; (1) the secured status of Thompson's claim, (2) the amount of Thompson's Claim, and (3) Wardley's interest in Thompson's claim. The Court will address each of these separately.

-10-

**Thompson's Claim is Unsecured.**

<u>Thompson is estopped from asserting a secured claim.</u>  Section 303(b)(2) provides that one or more holders of an unsecured claim that is not contingent may file an involuntary petition. A creditor whose claim is fully secured may not file an involuntary petition. The involuntary petition filed by Thompson represents that she was the holder of an unsecured claim. Thompson now asserts that she is a secured creditor. The doctrine of judicial estoppel "applies when, among other things, a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1249 (2010).  As a result, Thompson is estopped from asserting that her claim is secured.

<u>Thompson's execution was void.</u>  Although Thompson's execution on the Gilbert Development Judgment occurred while this case was dismissed, Thompson invoked the jurisdiction of this Court to vacate its prior order dismissing the case. The effect of this Court's order vacating the order of dismissal was to reinstate the automatic stay. *In re Diviney*, 225 B.R. 762, 770 (B.A.P. 10th Cir.1998). Thompson had full knowledge of the facts that had occurred during this time and that a bankruptcy petition operates as a stay of all acts to collect on a prepetition debt. Reinstating the bankruptcy case would also make the writ of execution a postpetition transfer. Thompson can not now complain because of the consequences of the order she sought. In fact, Thompson does not argue there was no stay because the case had been dismissed, but she argues there was no stay because of this Court's order granting relief from the stay.

Thompson argues that this Court's order granting relief from the stay to allow the State Court litigation to proceed allowed her to execute on the property of the estate. The Court disagrees. The Court's order was entered pursuant to a motion to allow the State Court to determine whether certain bank accounts were property of the estate. Thompson argues that if the stay were terminated with respect to the Debtor that she should also have relief from the stay to proceed in the State Court. The Court's order granted relief from the stay to permit the State Court litigation to proceed. It did not grant relief to execute upon assets of the bankruptcy estate. Any action taken in violation of the automatic stay is void and without effect. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994). Section 362(a)(6) stays any act to collect or recover a prepetition claim, including acts to collect a prepetition claim out of property that was transferred by the debtor prior to the commencement of the case. *In re Silver*, 303 B.R. 849, 864 (B.A.P. 10th Cir. 2004) (Voiding post-petition tax lien because it was filed in violation of § 362(a)(6)).

Thompson's execution did not create a lien on the Trustee's cause of action. Even if the Court were to accept Thompson's argument that her execution against the Gilbert Development judgment was not stayed, the execution did not create a lien on the cause of action asserted by the Trustee. The Trustee's potential causes of action are avoidance actions created by the Bankruptcy Code to recover assets transferred to Wardley. Wardley asserts that the Gilbert Development judgment was transferred to him well before Thompson's execution and there was nothing for Thompson to execute on. The Trustee's claim is that he may potentially avoid this transfer and the subsequent $350,000 transfer utilizing the Trustee's bankruptcy avoidance powers. If the transfer of the Gilbert Development judgment to Wardley is not avoided, the judgment is not an asset of this estate. The estate has no interest in the judgment and

Thompson's claim is not secured by a lien on property in which the estate has an interest. Thompson does not have a secured claim under 11. U.S.C. § 506(a). Trustee avoidance powers are exercised for the benefit of all creditors, not for the benefit of any one creditor. *In re First Capital Mortg. Loan Corp.*, 917 F.2d 424 (10th Cir. 1990) (Funds recovered under the bankruptcy avoidance powers are property of the bankruptcy estate and not subject to the claim of any single creditor).

**The Amount of Thompson's Claim IS $132,136.99.**

Pre-Judgment Interest on the 2005 Judgment. The 2005 Judgment awarded judgment in favor of Thompson " in the sum of $46,000, together with interest thereon at the rate of ten percent (10%) per annum as provided by law and her costs in the action." The judgement is not the model of clarity. The jury verdict provided that damages (which pursuant to jury instructions were limited to commissions) totaled $46,000. Interest was not included in the jury's calculation of damages. The Court considered referring the judgment back to the State Court for clarification, but because the case judge is no longer on the bench, there is little benefit in referring this matter to a state court judge who has no more knowledge regarding the judgment than this Court. So this Court will look to the applicable facts and law to interpret the judgment.

Utah Code Ann. § 15-1-1(2) provides the basis for pre-judgment interest by stating that "[u]nless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum." Under Utah Code Ann. § 15-1-1(2), a prevailing plaintiff is entitled to the statutory legal rate of interest from the date payment is due to the judgment date. *Davies v. Olson*, 746 P.2d 264, 270 (Utah Ct. App. 1987).

Utah Code Ann. § 15-1-4 provides the basis for post-judgment rates of interest; "Except as provided in Subsection (2)(b), a judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties, which shall be specified in the judgment." Section 15-1-4(3)(a) further provides "[e]xcept as otherwise provided by law, other civil and criminal judgments . . . shall bear interest at the federal post-judgment interest rate . . . plus 2%". (b) the post-judgment interest rate in effect at the time of the judgment remains the interest rate during the duration of the judgment.

Utah case law provides that the true test of whether pre-judgment interest should be allowed is not whether damages are unliquidated or otherwise, but whether injury and consequent damages are complete and interest can be allowed from the date the injury is suffered. *See*, *Fell v. Union Pacific,* 88 P. 1003 (Utah 1907) and *Bingham Coal & Lumber v. Board of Education of Jordan School District,* 211 P. 981 (Utah 1922).

The contract that the 2005 Judgment was based upon did not provide for an interest rate. The jury verdict was limited to determining the injury suffered by Thompson and did not address pre-judgment interest. The interest should therefore be determined by state law. The Court finds that the reference in the 2005 judgment of 10% interest is consistent with pre-judgment interest provided by law and is inconsistent with post-judgment interest provided by law.

After considering the facts above and the applicable law, this Court concludes that the 2005 Judgment included pre-judgment interest in the amount of 10% per annum which began to accrue on June 28, 1996, the closing date of the real estate transaction at issue, and continued through December 13, 2005. The total pre-judgment interest that accrued on the 2005 Judgment is $43,555.07.

<u>Post-Judgment Interest on the 2005 Judgment</u>.  As previously stated, Utah Code Ann. § 15-1-4 provides the basis for post-judgment rates of interest.  A judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties, which shall be specified in the judgment.  All other civil and judgments bear interest at the federal post-judgment interest rate as of January 1 of each year plus 2%.  The post-judgment interest rate in effect at the time of the judgment remains the interest rate during the duration of the judgment.

A civil judgment bears interest at the statutory rate unless the judgment is based on a *contract rate agreed to by the parties* and *the rate must be specified in the judgment*.  There was no agreed contract rate between Thompson and Wardley and the 2005 Judgment did not specify a post-judgment rate of interest.  The Court concludes that the post-judgment rate of interest on the 2005 Judgment is the post-judgment interest as provided under Utah Code Ann. § 15-1-4(3).  The 2005 Judgment was entered on December 13, 2005.  The federal post-judgment interest rate in effect as of January 1, 2005 was 2.77%[4] and as a result, the applicable post-judgment rate of interest on the 2005 Judgment is 4.77 %.  Under Utah law post-judgment interest only accrues on the principal and does not accrue on pre-judgment interest.  *See, SFR, Inc. v. Comtrol, Inc.* 177 P.3d 629, 634-35 (Utah Ct. App. 2008) (Post-judgment interest is correctly awarded only on the principal and does not compound pre-judgment interest).  Beginning with a principal amount of $46,000 on December 15, 2005 and accruing interest at 4.77%  to the petition date, August 28, 2009, results in post-judgment interest on the 2005 Judgment of $8,115.30.  On the petition date, Thompson's total claim amount with respect to the 2005 Judgment is as follows: Principal of

---

[4] Federal Reserve Statistical Release - Historical Data.

$46,000, plus pre-judgmentinterest of $43,555.07, plus post-judgment interest of $8,115.30 for a total of $97,670.37.

Interest on the 2006 Judgment. There was no award of pre-judgment interest on the 2006 Judgment. Once the 2006 Judgment was entered, it was entitled to accrue post-judgment interest pursuant to Utah Code Ann. § 15-1-4(3)(a), which provides for a judgment to accrue interest at the federal post-judgment interest rate plus 2%. The 2006 Judgment was entered on August 3, 2006. The federal post-judgment interest rate in effect as of January 1, 2006 was 4.37%[5] and as a result, the applicable post-judgment rate of interest on the 2005 Judgment is 6.37%. With a principal of $33,008 beginning on August 3, 2006, and interest accruing at 6.37% to August 28, 2009, the total accrued post-petition interest would be $6,457.77. Thompson's total claim amount with respect to the 2006 Judgment is as follows: Principal of $33,008 plus post-judgment interest of $6,457.77, for a total of $39,466.62.

Post-Judgment Attorneys' Fees and Costs. The underlying agreement between Thompson and the Debtor provided for the award of attorneys' fees and costs made necessary to enforce the contract, but on December 13, 2005, Thompson's claim on the contract was reduced to judgment. If a judgment fails to provide or specify that post-judgment attorney's fees are allowed, there can be no basis for attorneys' fees absent a statutory provision. Thompson cites to no statute that supports her claim for post-judgment attorneys' fees and costs. Neither the 2005 Judgment nor the 2006 Judgment provide for an award of post-judgment attorney fees.

---

[5]Federal Reserve Statistical Release - Historical Data.

<u>Total Claim Amount After Credit for Payment</u>.  Thompson's Claim should be reduced by the $5,000 payment of November 15, 2006.  Based upon the foregoing, the Court finds that Thompson's claim should be allowed in the following amount:

| | |
|---|---:|
| Pre-judgment interest on the 2005 Judgment. | $43,555.07 |
| 2005 Judgment plus post-judgment interest on the principal of the 2005 Judgment from December 13, 2005 through August 28, 2009. | $54,115.30 |
| 2006 Judgment plus interest accrued from August 3, 2006 to August 28, 2009. | $39,466.62 |
| Less $5,000.00 payment of November 15, 2006. | <u>-$5,000.00</u> |
| Total claim amount. | $132,136.99 |

Thompson may be allowed interest on this claim under 11 U.S.C. § 726(a)(5) in the event that funds are available for such a distribution.

**Wardley Has No Ownership Interest in Thompson's Claim.**

A properly filed proof of claim constitutes prima facie evidence and an objecting party has the burden of going forward and must do so with evidence of a probative force equal to the proof of claim.  *In re Broadband Wireless Intern. Corp.*, 295 B.R. 140 (B.A.P. 10th Cir. 2003). The objecting party has the burden of producing evidence supporting its objection.  *In re Geneva Steel Co.*, 260 B.R. 517 (B.A.P. 10th Cir. 2001).

Wardley argues that he has a claim against the bankruptcy estate as a result of an ownership interest in the 2005 Judgment and the 2006 Judgment that he obtained at the sheriff's sale conducted on July 22, 2009, and that Thompson's claim should be reduced by the amount of the ownership interest Wardley acquired from Findlay.  Other than the sheriff's sale, Wardley offered no evidence that Wardley has an ownership interest in the 2005 Judgment and the 2006 Judgment or the amount of the ownership interest.  The only interest Wardley could have

acquired at the sheriff's sale was Findlay's rights in the 2005 Judgment and the 2006 Judgment. The 2005 Judgment and the 2006 Judgment are in favor of Thompson. Neither judgment awards any rights or interest to Findlay. Findlay disavowed any ownership interest in the judgments and does not assert an attorney's lien.

Wardley's claim of ownership in the 2005 Judgment and the 2006 Judgment is not supported by the evidence. It is not at all clear that Findlay had any interest in the judgments at the time of Wardley's execution or the amount of that interest. But the Court does not need to resolve that question because what is clear is that any interest Findlay had was, at most, a lien interest, not an ownership interest. The extent and amount of a lien interest in Thompson's allowed claim is not an issue that needs to be resolved by this Court in this case. Having failed to meet his burden, the portion of Wardley's objection based on his assertion of an ownership in the 2005 Judgment and the 2006 Judgment is overruled.

-------------------------------------End of Document-----------------------------------------------------

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **Findings of Fact and Conclusions of Law in Support of Allowing Cindy L. Thompson's Claim** will be effected through the Bankruptcy Noticing Center to the following parties.

George B. Hofmann
Melyssa D. Davidson
Parsons Kinghorn & Harris
111 East Broadway
11th Floor
Salt Lake City, UT 84111

Cindy L. Thompson
1718 W. Joust Cir.
Salt Lake City, UT 84116

John T. Anderson
Anderson & Karrenberg
50 West Broadway
Suite 700
Salt Lake City, UT 84101-2006