**The below described is SIGNED.**

**Dated: November 09, 2012**

_R. KIMBALL MOSIER_
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number 09-29171 |
|---|---|
| Wardley Corporation, | Chapter 7 |
| Debtor. | Judge R. Kimball Mosier |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ASSESSING SANCTIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011**

The scheduled hearing on the Court's order to show cause why Cindy Thompson should not be sanctioned under Federal Rule of Bankruptcy Procedure 9011 came before the Court on August 7, 2012. Thompson appeared, *pro se*. Melyssa D. Davidson and George B. Hofmann of Parsons Kinghorn Harris appeared on behalf of George Hofmann, the chapter 7 trustee, and John T. Anderson of Anderson & Karrenberg, PC, appeared on behalf of Lynn B. Wardley. These findings of fact and conclusions of law supplement those made at the hearing.

**JURISDICTION**

The matter before the Court is the Order to Show Cause Why Cindy L. Thompson should Not Be Sanctioned Under Federal Rule of Bankruptcy Procedure 9011.  This proceeding arises in a case under title 11 of the United States Code and under Federal Rule of Bankruptcy Procedure 9011, and this Court has original jurisdiction over this proceeding under 28 U.S.C. §§ 157(b)(1) and 1334.  This is a core proceeding under 28 U.S.C. §§ 157(b)(1), and the Court may enter a final order.

## FACTUAL FINDINGS

This bankruptcy case began on August 28, 2009, when Thompson filed an involuntary bankruptcy petition against the Debtor, Wardley Corporation, but the story began more than a decade before.  This bankruptcy case is essentially a continuation of litigation between Thompson and Lynn B. Wardley, and the factual background is important to put this matter in proper context.

**The Prepetition History.**

Thompson was formerly employed by the Debtor as a real estate agent.  A dispute arose between Thompson and the Debtor regarding a real estate commission earned by Thompson for a closing which occurred on June 28, 1996.  As a result of the dispute, in 1999 Thompson commenced a lawsuit against the Debtor in the Third District Court, State of Utah.  A jury's Special Verdict was entered on November 18, 2005.  The Special Verdict made two findings: (1) The Debtor breached its agreement with Thompson, and (2) The amount of damages (which pursuant to jury instructions were limited to commissions) totaled $46,000.00.  Interest was not included in the jury's calculation of damages.  On December 13, 2005, the Third District State

Court awarded Thompson a judgment against the Debtor in the amount of $46,000 together with interest at 10% per annum as provided by law (2005 Judgment). On August 3, 2006, Thompson was also awarded a judgment against the Debtor in the amount of $33,008.85 for her attorneys' fees and costs (2006 Judgment). Thompson received a $5,000 payment in November 2006 but all of Thompson's other efforts to collect on her judgments were unsuccessful.

While Thompson's litigation against the Debtor was pending, in July of 2001, the Debtor sold its assets to NRT, Inc., but any lawsuits involving the Debtor that were pending or subsequently filed were excluded from the sale. In April of 2003, Gilbert Development Corporation brought a lawsuit against the Debtor, and others, in the Fifth District Court, State of Utah. In April of 2009 the Fifth District State Court entered final judgment on the merits of that case in favor of the defendants. On March 13, 2009, the Fifth District State Court entered a Judgment in Favor of Defendants on Attorneys' Fees and Costs (Gilbert Development Judgment), awarding the defendants $410,823.89.

**The Postpetition Gap Period.**

Thompson filed the involuntary petition against Debtor on August 28, 2009. In its answer to the petition the Debtor acknowledged that it was unable to pay Thompson's judgment but contested the petition on the grounds that it was filed in bad faith. Throughout the involuntary bankruptcy proceeding, the Debtor asserted that it has no assets.[1]

On July 26, 2010, the Debtor filed a motion to dismiss the involuntary proceeding. On July 29, 2010, Ms. Thompson also filed a motion to dismiss the involuntary proceeding. The

---

[1] In three separate hearings, the Debtor has represented to this Court that it had no assets. February 22, 2011, Oral Argument at 2:13:21 pm; May 20, 2010, Oral Argument at 10:12:58 am; April 29, 2010, Oral Argument at 1:36:12 pm.

Court entered its order dismissing this case on August 18, 2010. In doing so, the Court granted the Debtor's motion to dismiss and denied Thompson's motion to dismiss.

On December 29, 2010, Gilbert Development and the Debtor entered into a settlement agreement to resolve the Gilbert Development Judgment. Gilbert Development agreed to pay to the Debtor the sum of $350,000 no later than December 31, 2010.

Paragraph 10 of the Settlement Agreement states as follows:

> Authority. Each party represents and warrants that the individual signing this Agreement on behalf of the party is authorized to do so and binds the party on whose behalf he or she is signing. The Parties further represent and warrant that each is the sole holder of the claims being released in this Agreement, that the party has not assigned those claims to any other person or entity, and that no one else has any claim, title or interest in or to the claims being released herein.

On December 30, 2010, Gilbert Development wire transferred $350,000 to Wardley.

Apparently frustrated in her attempts to collect her on judgments pursuant to state law, Thompson returned to this Court invoking its jurisdiction. On May 23, 2011, Thompson filed an amended motion to vacate the order of dismissal (Motion to Vacate Dismissal). Thompson invoked Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, arguing that the Gilbert Development settlement was part of a fraud upon on this Court. In response to the Motion to Vacate Dismissal, the Debtor produced an Unconditional Assignment dated August 12, 2005, which purports to assign all of the Debtor's right, title, and interest in the proceeds of any recovery, obtained in connection with the Gilbert Development lawsuit and the Thompson lawsuit, to Wardley. Notwithstanding Thompson's postpetition discovery requests, the Debtor had failed to disclose the Assignment. The Assignment was not disclosed to this Court until June 22, 2011 when it was attached to the Debtor's objection to the Motion to Vacate Dismissal.

The Court held a hearing on the Motion to Vacate Dismissal on July 7, 2011. At the hearing, the Court had extensive discussions with Thompson about the relief she was requesting and the consequences that may result. Specifically, Thompson was advised by the Court that if the dismissal were vacated, an order for relief entered and a trustee appointed, Thompson's role in this case would essentially be over. Thompson persisted in her Motion to Vacate Dismissal.

There is a potential conflict between the Assignment, which purports to transfer all right, title and interest in the Gilbert Development recovery to Wardley, and the settlement agreement with Gilbert Development, which was executed by the Debtor and represents that the Debtor is the holder of the claim being released. This Court concluded that the Assignment was a self-serving document signed by Mr. Wardley for the Debtor as assignor and by Mr. Wardley as assignee and was evidence that would have been relevant to possible claims against Wardley and to the Debtor's motion to dismiss the involuntary petition. Because the Assignment had not previously been disclosed, this Court surmised that there may be potential avoidance actions which should be investigated by a trustee. After considering the evidence and arguments at the hearing, this Court determined that the Motion to Vacate Dismissal should be granted under Rule 60(b)(2). On August 1, 2011, this Court entered an order vacating the dismissal and the Debtor thereafter filed a consent to entry of an order for relief.

**After the Order For Relief.**

On September 1, 2011, the order for relief was entered and the Trustee was appointed. It appears that the Court's advice and instruction to Thompson at the hearing on her Motion to Vacate Dismissal fell on deaf ears. After the Trustee's appointment, Thompson continued to file numerous pleadings in this case. Her claim which was originally $150,000, the amount

-5-

Thompson claimed on the involuntary petition, ballooned to $596,226.92. She sought to have Wardley included in this bankruptcy as the Debtor's alter ego.

Apparently the Trustee's efforts to administer the bankruptcy estate were not to Thompson's liking because on May 7, 2012, she filed a verified motion to remove the Trustee. Thompson asserted that the Trustee had failed to perform his duties under 11 U.S.C. § 704 because he had failed to pursue an avoidance action against Wardley, had failed to object to Wardley's claim and had failed to communicate with Thompson. On May 24, 2010, the Trustee filed a lengthy and detailed objection to the motion to remove him as trustee arguing that Thompson's motion was without merit.[2] The United States Trustee also filed a short response to Thompson's motion asserting the motion was without merit and praying that the motion be denied.

On May 24, 2012, the Trustee also filed a motion to approve a settlement with Wardley. To resolve the estate's claims against Wardley and liquidate Wardley's claims, the Trustee proposed to settle the estate's claims against Wardley for $190,000 and a waiver of Wardley's claim. Absent the cost of administration being driven up by useless litigation, the Trustee estimated his settlement with Wardley would generate sufficient funds to pay Thompson's allowed claim in full.[3]

---

[2] Mr. Hofmann is a member of the panel of standing chapter 7 trustees for the District of Utah and had good reason to be concerned about Thompson's motion to remove him as trustee. Under 11 U.S.C. § 324(b) whenever a court removes a trustee under § 324(a), such trustee shall thereby be removed in all other cases unless the court orders otherwise.

[3] The Trustee estimated Thompson's claim to be approximately $161,000.00

The Court finds the Trustee's motion to approve his settlement significant because it gave Thompson ample time to withdraw her motion to remove the Trustee prior to the scheduled hearing of May 31, 2012. Thompson was obviously entitled to object to the proposed settlement, but the fact that the Trustee had negotiated a settlement with Wardley clearly contradicted Thompson's assertions that the Trustee had failed to perform his duties. The Trustee's proposal was unacceptable to Thompson. Apparently Thompson was not interested in being paid the claim amount she asserted on the involuntary petition but wanted something more. Even in light of the proposed settlement, Thompson elected to proceed with her motion to remove the Trustee and filed a reply memorandum in support of her motion to remove the Trustee. Thompson also objected to the Trustee's settlement of the estates claims against Wardley and objected to Wardley's proof of claim,[4] even though Wardley was waiving his claim as part of the settlement with the Trustee.

Thompson's motion to remove the Trustee came before the Court on May 31, 2012, and evidence was taken.[5] The evidence clearly showed that at the time Thompson filed her motion to remove the Trustee, she was aware that the Trustee was seeking to negotiate a settlement with Wardley. The Court denied Thompson's motion to remove the Trustee finding that Thompson produced no evidence to support her allegation that the Trustee had failed to perform his duties.[6]

On June 1, 2012, the Court's issued an order to show cause directing Thompson to appear

---

[4] Thompson and Wardley are the only creditors who have filed claims in this case.

[5] The Court accepted the factual allegations in Thompson's pleadings as uncontested facts.

[6] Specifically, other than general allegations, Thompson failed to produce any evidence of incompetence, breach of fiduciary duty, lack of disinterestedness, holding a claim adverse to the estate, or failure to perform the Trustee's duties.

and show cause why her motion to remove the Trustee should not be treated as a pleading filed in violation of Bankruptcy Rule 9011(b)(1) and (3) and why she should not be sanctioned under Bankruptcy Rule 9011(c) in an amount necessary to reimburse the bankruptcy estate for the reasonable attorney fees and costs the Trustee incurred responding to Thompson's motion to remove him.

The order to show cause specifically referenced the hearing on Thompson's Motion to Vacate Dismissal conducted on July 7, 2011 and this Court's efforts to impress upon Thompson the fact that the consequence of vacating the order of dismissal would likely be the appointment of a chapter 7 trustee who may not handle matters according to Thompson's wishes.[7]

At the order to show cause hearing conducted on August 7, 2012, Thompson appeared but offered no evidence in response to the order to show cause and offered no evidence to support her assertions that the trustee has not complied with 11 U.S.C. § 704(a)(1), (2), (4), (5) and (7). Thompson simply complained that the Trustee had not consulted her concerning his decisions regarding administration of the estate and that he had not responded to some of her communications. When pressed by the Court about when Thompson attempted to communicate with the Trustee, Thompson was unable to provide any specifics.

## CONCLUSIONS OF LAW

The focus of Bankruptcy Rule 9011 is narrow. It relates to the time of signing a document and imposes an affirmative duty on each party, including *pro se* litigants, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed. *Eisenberg v.*

---

[7] A partial transcript of the July 7, 2011 hearing is attached hereto as Appendix 1.

*University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991). "[A]ll signers, not just attorneys, are on notice that their signature constitutes a certification as to the contents of the document." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 546 (1991). Filings which are not warranted by existing law or a good faith argument for the extension or modification of such law waste the resources both of this court and the parties. *In re Villa West Associates*, 146 F.3d 798, 808 (10th Cir. 1998).

Thompson failed to produce evidence to support her motion to remove the Trustee at the May 31, 2012 hearing, and when ordered by this Court to show cause why her motion to remove the trustee did not violate Bankruptcy Rule 9011, Thompson, once again, failed to articulate a proper reason for seeking to remove the Trustee and failed to provide any evidentiary support for her motion. Accordingly, the Court finds that Thompson's motion to remove the Trustee and supporting pleadings were filed in violation of Bankruptcy Rule 9011 in that they were filed for an improper purpose, needlessly increased the cost of litigation, and had no factual contentions that had, or were not likely to have, evidentiary support when filed.

Three factors that should be considered in determining the amount of Bankruptcy Rule 9011 sanctions are: (1) the opposing party's reasonable expenses incurred as a result of the violation, including reasonable attorney fees; (2) the minimum amount necessary adequately to deter future misconduct; and (3) the offender's ability to pay. In addition, a court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances. *In re Rex Montis Silver Co.*, 87 F.3d 435, 440-41 (10th Cir. 1996). The Trustee has submitted a

detailed and itemized accounting of the fees and costs incurred by him in responding to the motion to remove, and the Court finds that the Trustee reasonably and necessarily incurred fees and costs in the amount of $6,824.54 responding to the motion to remove the trustee. Given the facts and circumstances of this proceeding, the Court finds that the amount of $6,824.50 is the minimum amount necessary to adequately deter future misconduct, that Thompson has the ability to pay the sanction because, as suggested by the Trustee, the sanction can be paid in full through the use of an offset when the Trustee makes his § 726 distribution. The Court finds that Thompson's litigious history in this proceeding and Thompson's bad faith in bringing the motion all support a monetary sanction in an amount which is sufficient to reimburse the estate for the reasonable costs and expenses that were incurred as a direct result of her actions.

Accordingly, the Court finds that Thompson should be sanctioned in the amount of $6,824.50, and the sanction shall be paid in the form of an offset against Thompson's claim at the time the Trustee makes his § 726 distribution in this case.

---------------------------------------End of Document---------------------------------------------------

_____ooo0ooo_____

## SERVICE LIST

      Service of the foregoing **Findings and Conclusions in Support of Order Assessing Sanctions Under Federal Rule of Bankruptcy Procedure 9011** will be effected through the Bankruptcy Noticing Center to the following parties.

George B. Hofmann
Melyssa D. Davidson
Parsons Kinghorn & Harris
111 East Broadway
11th Floor
Salt Lake City, UT 84111

Cindy L. Thompson
1718 W. Joust Cir.
Salt Lake City, UT 84116


John T. Anderson
Anderson & Karrenberg
50 West Broadway
Suite 700
Salt Lake City, UT 84101-2006